1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KRIS K. BENNETT,

                              Plaintiff,

        v.

WYATT HULL,

                              Defendant.

CASE NO. 3:21-cv-05858-JHC-BAT

**REPORT AND
RECOMMENDATION**

Defendant has filed a motion for summary judgment, Dkt. 27, seeking dismissal of Plaintiff's 42 U.S.C. § 1983 prisoner complaint. Dkt. 5  Defendant's motion was filed on June 8, 2022 and noted for July 1, 2022. Plaintiff has not filed a response. Having considered the motion and the record, the Court recommends DENYING the motion as to Count I and GRANTING the motion as to Counts II and III and DISMISSING these counts.

## BACKGROUND

**A.      Plaintiff's Complaint**

The complaint contains three Counts. Plaintiff alleges in Count I that Washington Department of Corrections Officer (WDOC), W. Hull violated Plaintiff's First Amendment rights on May 19, 2019 by "reading the two page legal letter containing facts, evidence and answers" in a letter "clearly marked legal letter" from Plaintiff's civil lawyer. Dkt. 5 at 5.

REPORT AND RECOMMENDATION - 1

Count II alleges violations of the First and Sixth Amendments. *Id.* at 8 and 9. Plaintiff claims on May 14, 2020, Officer Goodwin properly processed Plaintiff's "legal letter" to the "Civil Rights Justice Center," by placing it into "a locked legal mail lock box for the night shift to process." *Id.* at 9. Four days later, the letter was returned to Plaintiff "due to no log sheet which is required." *Id.* Plaintiff claims Defendant Hull worked the night shift and "blocked" Plaintiff's letter to the Civil Rights Justice Center" in violation of the Sixth Amendment. *Id* at 9-10.

Count III, alleges on June 19, 2019, Defendant Hull violated the First Amendment by retaliating against Plaintiff. After Plaintiff filed a grievance against Defendant, Plaintiff alleges he approached Defendant to ask about his missing mail and Defendant retaliated by stating: "you filed a grievance on me Bennett, you know what happens next." *Id.* at 12.

**B.    Defendant's Motion for Summary Judgment**

Defendant argues Count I should be dismissed because Defendant avers he recalls the alleged incident and agrees he scanned but he did not read legal mail in Plaintiff's presence. Defendant avers he scanned the letter because Department of Correction policy 405.100 requires staff to scan legal mail to ensure it is legal mail and does not pose a threat to institutional safety or security. Dkt. 28 (Defendant Hull's Declaration). Defendant avers he started to scan the legal mail when he received a phone call that delayed his scan. Defendant claims Plaintiff became upset because the phone call took too long and said he "was not comfortable with Hull processing his paperwork." *Id.*  Defendant avers he gave the legal letter to Plaintiff and did not refuse to process it as Plaintiff alleges.

Defendant argues the Court should dismiss Count II because Plaintiff's Sixth Amendment claim fails as a matter of law. The Sixth Amendment does not attach to civil cases and Count II

REPORT AND RECOMMENDATION - 2

1    alleges Defendant Hull interfered with the mailing of a "legal letter" to the Civil Rights Justice

2    Center regarding a civil matter. Additionally, Defendant contends the claim is based upon a

3    conclusory and speculative accusation lacking any factual support. Defendant Hull avers while

4    he worked nights shifts his sole "mail-related duties" was to empty out the mailbox and that he

5    did do anything to interfere with Plaintiff's outgoing legal mail.  Dkt. 28 at 9-10.

6         Lastly, Defendant argues Count III should be dismissed because the complaint contains

7    no facts establishing Defendant took adverse action, an element of a retaliation claim, and

8    submitted a grievance regarding a matter that occurred on a date that is different than the date

9    alleged in the complaint. *Id.* at 10-11. Additionally Defendant avers the alleged incident never

10   occurred and that the only time he spoke with Plaintiff was May 19, 2019 when he scanned the

11   letter at issue in Count I.

**DISCUSSION**

**A.    Legal Standards**

    **a.    Summary Judgment**

15        The Court may grant Summary judgment if the pleadings establish there is no genuine

16   issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

17   Civ. P. 56(a). Defendant is entitled to judgment as a matter of law if Plaintiff has failed to

18   sufficiently meet his burden of establishing an essential element of a claim brought. *Celotex*

19   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the

20   record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.

21   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party

22   must present specific, significant probative evidence, not simply "some metaphysical doubt").

23        Conversely, a dispute over a material fact exists if there is sufficient evidence supporting

REPORT AND RECOMMENDATION - 3

1    the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

2    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986);  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

3    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

4         Whether there is a dispute of material fact can be a close question. The Court must

5    consider the substantive evidentiary burden the nonmoving party must meet at trial—e.g., a

6    preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254. The Court must

7    resolve any disputed factual issues in favor of the nonmoving party when the facts specifically

8    attested by that party contradict facts specifically attested by the moving party. The nonmoving

9    party may not merely state that it will discredit the moving party's evidence at trial, in the hopes

10   that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc*., 809 F.2d at

11   630 (relying on  *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are

12   not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

13   871, 888–89 (1990).

14        Although Plaintiff failed to oppose Defendant's summary judgment motion, this failure is

15   not automatic ground to grant the motion. As the advisory committee notes to Rule 56 explain,

16   "summary judgment cannot be granted by default even if there is a complete failure to respond to

17   the motion." Rather, an "opposing party's failure to respond to a fact asserted in" a summary

18   judgment motion simply "permits a court to consider the fact undisputed for purposes of the

19   motion." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (internal quotation marks

20   omitted).

21        Also, as Plaintiff proceeds *pro se*, the Court treats his pleadings more indulgently than

22   Defendant's pleading for summary judgment. *Lew v. Kona Hospita*l, 754 F.2d 1420, 1423 (9th

23   Cir.1985) The Court may also treat a "verified complaint"  "as an affidavit to oppose summary

judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir.1996). If a plaintiff states the facts in the complaint are true under penalty of perjury, as Plaintiff does here, the pleading is "verified." *Schroeder v. McDonald*, 55 F.3d 454, 460, n 10 (9th Cir.1995).

### b.    Plaintiff's § 1983 Claims

To prevail on a § 1983 claim, Plaintiff must establish (1) he suffered a violation of a right protected by the Constitution, and (2) the violation was proximately caused by a person acting under color of state law. *Crumpton v. Gates*, 847 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, the plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

In Count I, Plaintiff alleges Defendant violated the First Amendment by reading Plaintiff's legal mail. Prisoners have certain First Amendment rights regarding properly marked legal mail. Prison officials may require legal mail be "specially marked with the name and address of the attorney" and may open legal mail in the presence of the detained person. *See Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1212 (9th Cir. 2017); *Sherman v. McDougall*, 656 F.2d 527, 528 (9th Cir.1981) (citing *Wolff v. MacDonald*, 418 U.S. 539, 575–77 (1974)). Prison officials may not read but may inspect or scan legal mail "to ensure that a letter concerns only legal subjects." *Nordstrom v. Ryan*, 856 F.3d 1265,1272 (9th Cir. 2017).

It is undisputed Defendant handled a piece of Plaintiff's legal mail. What is in dispute is whether Defendant impermissibly read the contents of the mail, or permissibly scanned the contents of the mail. Plaintiff contends in his verified complaint Defendant "read" the letter from a law firm. Defendant does not deny possessing and opening the letter but contends he did not

1    "read" the letter but "scanned" it under DOC policy to ensure it was legal mail and did not

2    contain anything that could jeopardize prison safety or security.

3            Plaintiff and Defendant thus paint two different versions of what occurred. Defendant

4    claims Plaintiff's picture is insufficient. Although Defendant agrees Plaintiff was observing him,

5    Defendant contends Plaintiff cannot tell whether Defendant was reading or scanning the letter.

6    Defendant argues Plaintiff's claim of impermissible reading must therefore be dismissed because

7    it is based upon speculation. *See* Dkt. 27 at 7-8. But the alleged incident did occur, Plaintiff did

8    observe Defendant looking at the letter, and there is no other uncontestable evidence establishing

9    whether Defendant read or did not read the letter. The Court concludes there is sufficient

10   evidence that establishes a material dispute of fact, and that a trier of fact at a trial must thus

11   resolve the differing versions proffered by the parties over what occurred. Summary judgment

12   should accordingly be DENIED as to Count I.

13           Regarding Count II, Defendant argues Plaintiff's claim fails as a matter of law because

14   Plaintiff alleges Defendant violated the Sixth Amendment, and the Sixth Amendment does not

15   apply to communications to counsel in a civil matter. Dkt. 28 at 8-9. The argument sidesteps a

16   liberal construction of the complaint. Count II also alleges, albeit not well, the First Amendment

17   was violated, Dkt. 5 at 8, and then later alleges, the Sixth Amendment was violated. *Id*.at 9.

18           Plaintiff alleges the letter delayed was a letter to a civil lawyer regarding a civil claim.

19   The Sixth Amendment was thus not violated due to delay in mailing the letter and should be

20   dismissed. *See Nordstrom v. Ryan*, 762 F.3d 903, 909-10 (9th Cir. 2014) (Government violates

21   Sixth Amendment when it interferes with confidential relationship between a criminal defendant

22   and defense counsel).

23

REPORT AND RECOMMENDATION - 6

1    However, Plaintiff has "a First Amendment right to send and receive mail" while

2    incarcerated." *Id.* at 1271 (citation omitted). Assuming a First Amendment violation is also

3    alleged, the allegation fails because the complaint sets forth a one-time delay of four days. *See*

4    *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (temporary delay or isolated incident of delay

5    of mail does not violate a prisoner's First Amendment rights); *Holt v. Gardner*, 2020 WL 130527

6    at * 3 (E.D. Cal. Jan. 10, 2020) (isolated unintentional mail interference fails to establish a

7    constitutional violation); *Norton v. Hallock*, 2018 WL 5629345 at 4 (N.D. Cal. Oct. 29,

8    2018)(unreported) (One-time delay or mishandling of mail without any facts to support an

9    intentional act to hinder plaintiff is insufficient to establish active interference to a prisoner's

10   right to litigate).

11   The Court also notes Plaintiff implies Defendant intentionally caused the four-day delay

12   in the mailing of his letter to civil counsel. However, the complaint lacks any facts establishing

13   this. In fact, the complaint lacks any facts establishing Defendant did anything to delay the

14   mailing of the letter. Rather the complaint assumes that because Defendant may have had the

15   opportunity to delay the mail, he must have delayed the mail. Because the allegation is based

16   upon conclusory, and speculative assertions, the Court declines to fill-in-the blanks and presume

17   facts not established. Summary Judgment should accordingly be GRANTED and Count II should

18   be DISMISSED.

19   And lastly, in Count III Plaintiff alleges on June 19, 2019, Defendant violated the First

20   Amendment by retaliating against him. Dkt. 5. at 12. A prisoner alleging a First Amendment

21   retaliation claim must establish: (1) a state actor took adverse action against the prisoner, (2)

22   because of  the prisoner's protected conduct, and the action taken (3) chilled the inmate's exercise

23

REPORT AND RECOMMENDATION - 7

1  of his First Amendment rights, and (4 ) the action did not reasonably advance a legitimate

2  correctional goal. *See Rhodes v. M. Robinson, et al.,* 408 F.3d 559, 567-68 (9th Cir. 2005).

3         Defendant argues the Court should dismiss the claim because the alleged incident is

4  unsupported and never occurred. Dkt. 28 at 10-12. The complaint alleges on June 19, 2019,

5  Defendant made a "retaliatory und unlawful adverse action by making a statement about a

6  grievance I filed against him," *See* Dkt. 5 at 12. Specifically Plaintiff asked Defendant about his

7  missing mail and Defendant stated: "you filed a grievance on me Bennett, you know what

8  happens next."

9         Assuming the exchange occurred, Plaintiff has failed to establish a First Amendment

10  retaliation claim. The complaint alleges the June 19, 2019 statement is retaliatory. But the

11  statement itself is not an adverse act against Plaintiff considering the context of the exchange.

12  The complaint alleges Plaintiff filed a grievance against Defendant over his mail and approached

13  Defendant about this. The discussion between Plaintiff and Defendant thus involved Plaintiff's

14  mail and a grievance. Accepting for purposes of the motion for summary judgment that

15  Defendant stated, "you filed a grievance on me Bennett, you know what happens next,"

16  no rational trier of fact would find the statement was retaliatory; the statement is nothing more

17  than an acknowledgment Plaintiff filed a grievance and Plaintiff, as a prisoner, knows what

18  happens next, i.e. the grievance is addressed and reviewed through the Prison's grievance

19  process. Thus Defendant's statement alone does not constitute an adverse action that violates the

20  First Amendment.

21         Because the statement alone is insufficient to establish adverse action, the Court also

22  examines whether the claimed statement in Count III is retaliatory in view of the allegations in

23  Counts I and II. The statement alleged in Count III occurred after the May 19, 2019 incident

REPORT AND RECOMMENDATION - 8

1  alleged Count I. There is no connection between the alleged acts in Count I and the statement in

2  Count III. The statements in Count III occurred after the acts in Count I, and thus the statements

3  are not a harbinger of retaliatory intent. That is, the acts in Count I could not have been

4  committed in retaliation of any grievance against Defendant or statement Defendant made and

5  thus do not evidence "adverse action."  Also, the complaint alleges the statement made in Count

6  III, is not related to the actions in Count I but instead regards a different grievance over "return

7  mail receipts."

8         Count II alleges delay of mail on May 14, 2020, which occurred nearly a year after

9  Defendant made the alleged retaliatory statement in June 2019. The acts in Count II do not

10  evidence retaliation because there is no evidence Defendant delayed the May 19, 2020 letter. At

11  best Plaintiff lodges a conclusory accusation that Defendant could have delayed the letter. There

12  are no facts supporting this speculative claim and it accordingly fails to show Defendant

13  engaged in a retaliatory act in May 2020. *See e.g. Wood v. Yordy,* 753 F.3d 899, 904 (9th

14  Cir.2014) (Speculation that defendants acted out of retaliation is not sufficient).

15         Second, the gap between the June 2019 statement and the May 2020 delay of mail claim

16  cuts against establishing retaliatory intent. *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634,

17  646 (9th Cir.2004) (thirteen-month gap is too long to support an inference of retaliation

18  causality); *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003); *Pratt v. Rowland*, 65

19  F.3d 802, 808 (9th Cir.1995) (six-month gap may support an inference of retaliation, but is

20  usually insufficient by itself); *Clark County School District v. Breeden*, 532 U.S. 268, 273–74

21  (2001) (per curiam) (causal link based on temporal proximity must be "very close."). 

22  Defendant also asserts he is entitled to qualified immunity because even if the Court assumed

23  Defendant violated Plaintiff's rights, those rights were not clearly established at the time of the

misconduct. Dkt. 27 at 11. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). If the allegations make out a constitutional violation, the court must also determine whether the right alleged to have been violated was "clearly established." *Saucier*, 533 U.S. at 201. A district court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 231-32.

Defendant does not enjoy qualified immunity as to Count I. Defendant makes no claim that reading a prisoner's legal mail violates the prisoner's rights and that these rights are not clearly established. Rather Defendant claims he did not violate this clearly established right because he scanned but did not read the legal mail. Whether Defendant properly scanned or improperly read the legal mail is a factual dispute that must be resolved at trial.

Defendant does not need qualified immunity as to Count II because Plaintiff has failed to establish Defendant violated his First or Sixth Amendment rights. One does not need qualified immunity when one commits no violation at all.

Qualifies immunity, however, applies to Count III. While it is clearly recognized that retaliatory acts against a prisoner may violate the First Amendment, the statement alleged in Count III is not a statement that a reasonable prison would have understood constituted adverse

action under the First Amendment. This is not a case in which Defendant made an adverse statement against Plaintiff, evidencing retaliatory intent, such as "I'm sick of your grievances, you're going to have more problems with the mail"; or "Stop grieving or you'll be sorry." Rather as noted above Plaintiff approached Defendant about a grievance over mail. Plaintiff initiated a conversation about a grievance. Defendant's alleged response, "you filed a grievance," acknowledges what Plaintiff said, and "you know what happens next" refers to the fact the prison has a process for addressing grievances. If Defendant's alleged statement means something else, such as "retaliation," the Court would have to divine that meaning by reading into Defendant's statement an intent that is not based on the actual words used by Defendant. The statement thus does not establish retaliatory intent and a constitutional violation. Even assuming the statement constituted "adverse" action for purposes of a First Amendment claim, it is not a statement that a reasonable person would have known violated the constitution. Accordingly, given the actual wording of the statement at issue, Defendant is entitled to qualified immunity as to Count III.

Accordingly summary judgment should be granted and Count III should be dismissed.

## OBJECTIONS AND APPEAL

The Court concludes summary judgment should be DENIED as to Count I. The Court further concludes summary judgment should be GRANTED as to Counts II and II, and those counts should be DISMISSED with prejudice.

Any objection to this report and recommendation must be filed no later than **July 25, 2022.** The Clerk shall note the matter for **July 29, 2022**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will

REPORT AND RECOMMENDATION - 11

then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 11th day of July, 2022.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12